**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| PCC AIRFOILS, LLC, | ) | CASE NO. 1:25-cv-00917-BMB |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| JUSTIN DAUGHERTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>DEFENDANTS' MOTION TO MAINTAIN ATTORNEYS' EYES ONLY DESIGNATIONS</u>

Pursuant to the Court's July 16, 2026 Minute Order, Rule 26(c) of the Federal Rules of Civil Procedure, and Paragraphs 3(b), 7, and 8 of the Stipulated Protective Order (Doc. 16), Defendants Justin Daugherty and Consolidated Precision Products Corp. ("CPP") respectfully move the Court to maintain the Attorneys' Eyes Only ("AEO") designations applied to CPP's document productions and the corresponding deposition testimony in this matter. The grounds for this Motion are set forth in the attached Memorandum in Support.

Respectfully submitted,

| | |
|---|---|
| /s/ James M. Drozdowski | /s/ Phil Eckenrode |
| James M. Drozdowski (0065215) | W. Eric Baisden (0055763) |
| Nancy Oliver (0071142) | Phil Eckenrode (0084187) |
| Joseph A. Nero (0095392) | **BENESCH, FRIEDLANDER, COPLAN** |
| **KAUFMAN, DROZDOWSKI &** | **& ARONOFF LLP** |
| **GRENDELL, LLC** | 127 Public Square, Suite 4900 |
| 29525 Chagrin Boulevard, Suite 250 | Cleveland, Ohio 44114 |
| Pepper Pike, Ohio 44122 | Telephone: 216.363.4500 |
| Telephone: 440.462.6216 | Facsimile: 216.363.4588 |
| Facsimile: 440.462.6504 | peckenrode@beneschlaw.com |
| jimd@kdglegal.com | ebaisden@beneschlaw.com |
| nao@kdglegal.com | *Counsel for Defendant Consolidated* |
| jn@kdglegal.com | *Precision Products* |
| *Counsel for Defendant Justin* | |
| *Daugherty* | |

1

## MEMORANDUM IN SUPPORT

### I.      INTRODUCTION

Defendants seek to maintain the AEO designations related to a certain third-party machining vendor[1] and Part 3076, because the designated material is highly commercially sensitive, especially in the hands of a direct competitor. Between head-to-head competitors, that is the precise purpose of AEO protection, and it is exactly what the Parties agreed upon and have been relying upon throughout the litigation under the two-tier Protective Order. (Doc. 16 ¶¶ 3(b), 5(b).)

The AEO designations should stand for several reasons. On the merits, the sworn record confirms: that PCC has never manufactured Part 3076; CPP's development and production of Part 3076 *predated* Daugherty's employment with CPP; and the Third Party Vendor does not do business with PCC. PCC's counsel already has unrestricted access to every AEO designated page, and PCC squandered its opportunity to take advantage of the Protective Order's expert provision which supplies the exact mechanism this Circuit has endorsed for analyzing a competitor's technical material.

What PCC actually seeks, i.e., review by its IGT technical leaders, is disclosure to the individuals best positioned to integrate the material into PCC's competing programs. And on the equities, PCC administered the AEO tier alongside Defendants from the first week of this case, designated its own sensitive material under the same provision (Docs. 24, 25), marked CPP's AEO designated documents as its own deposition exhibits in May 2026, and did not challenge a single designation until well after fact discovery had closed and the depositions were complete. For the foregoing reasons, the designations should be maintained.

---

[1] Because the identity of the third party machining vendor has been designated AEO, for purposes of this motion, Defendants will refer to it simply as Third-Party Vendor.

## II.    BACKGROUND

### A.    The Stipulated Protective Order and Its AEO Tier

At the outset of expedited discovery, the parties jointly moved for, and the Court entered, the Stipulated Protective Order. (Docs. 14, 16.) Paragraph 3(b) permits an AEO designation for "confidential or highly sensitive financial, personal, technical, proprietary, or business information the disclosure of which could result in injury" to the designating party. (Doc. 16 ¶ 3(b).) Paragraph 5(b) confines disclosure of AEO material to counsel, experts, court reporters, and persons approved by consent or Court order; unlike merely Confidential material, it may not be reviewed by the parties themselves. (Id. ¶ 5(b).) Paragraph 4 extends the same protections to designated deposition testimony "pending objection." (Id. ¶ 4.)

### B.    Both Parties Have Designated and Relied on the AEO Protections Throughout the Case

Expedited discovery proceeded in May and June 2025, with document productions and six depositions completed by June 30, 2025. All parties, including PCC, designated the bulk of their competitively sensitive productions under either designation available in the Protective Order, and the preliminary injunction briefing was redacted and sealed on that basis. When this Court directed the parties to justify sealing under *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016), it was PCC that moved to retain the redactions *of its own* pricing, cost, and negotiation-strategy material, and this Court granted that motion. (Docs. 24, 25.) The confidentiality architecture of this case is one PCC helped build, invoked, and benefited from.

After denial of PCC's preliminary injunction motions (Doc. 39), following the status conference on October 16, 2025, the Court set the deadline for non-expert discovery on March 31, 2026. (Doc. 43.) For reasons that are entirely unclear, PCC waited until January 27, 2026 to serve

3

its First Set of Interrogatories and Requests for Production. Defendants served responses on March 12, 2026 and completed their productions on March 23, 2026, designating CPP's most commercially sensitive documents AEO, consistent with how all parties had handled expedited discovery. ***PCC did not object to any of CPP's AEO designations.***

The parties then completed the two agreed post-cutoff depositions, of CPP's Rule 30(b)(6) designee, Ryan Walker, on May 7, 2026 and Mr. Daugherty on May 14, 2026, each witness' second deposition in this case. Each testified about AEO-designated subject matter in reliance on the Protective Order, and at both depositions PCC's counsel marked CPP AEO-designated documents as PCC's own exhibits and examined the witnesses on their contents. (Daugherty Dep. (May 14, 2026) Exs. 2-3, 7-13; CPP 30(b)(6) Dep. (May 7, 2026) Exs. 3-4, 11.)[2]

### C.      PCC's Post-Discovery Challenge and the Court's July 16 Order

Weeks after the depositions concluded, PCC's counsel questioned CPP's AEO designations on three topics[3]. On June 4, 2026, CPP proposed alternatives where PCC's counsel could discuss the topics generally with a designated PCC representative and Defendants offered to revisit any topic in good faith if PCC articulated a concrete connection between the topics and the subject matter of this litigation. Two weeks later, in its June 19 response, PCC flatly declared that the parties were at an impasse unless the AEO designations were removed. Defendants responded by letter dated June 26, 2026, reiterating that the designations are warranted. The dispute persists because PCC declined every alternative short of wholesale de-designation. At the Court's direction, the parties submitted position papers on July 9 and July 10, 2026, and at the July 16, 2026 status conference, the Court directed Defendants to file this motion should they wish.

---

[2] Excerpts of Mr. Daugherty's and Mr. Walker's depositions were marked as AEO, and Defendants will seek leave to file the same with the Court under seal.
[3] CPP does not oppose the challenge to de-designation of documents related to the 5-axis CNC project.

III.    LEGAL STANDARD

"Secrecy is fine at the discovery stage, before the material enters the judicial record," and a district court "may enter a protective order limiting the use or disclosure of discovery materials upon a mere showing of good cause." *Shane Grp.*, 825 F.3d at 305 (citation omitted). This motion concerns discovery-stage designations only, not public access to anything filed with the Court.

For AEO designations specifically, the designating party must describe the harm with "a particular and specific demonstration of fact," and the court balances the difficulty imposed on the party seeking access against "the need to protect information from abuse by competitors." *Deloitte Tax LLP v. Murray,* No. 1:20-cv-02487, 2022 WL 1406612, at *4 (N.D. Ohio May 4, 2022) (*quoting K & M Int'l, Inc. v. NDY Toy*, *L.L.C.*, No. 1:13CV771, 2015 WL 520969, at *4 (N.D. Ohio Feb. 9, 2015)). Defendants meet that standard below with specific record evidence.

IV.    ARGUMENT

A.    **The AEO Designated Material Is a Direct Competitor's Technical Engineering Information**

The documents and testimony CPP seeks to maintain as AEO-designated contain highly technical, engineering-specific information distinct from PCC's own processes. Both parties have treated exactly this type of sensitive information as AEO throughout this case. (See Doc. 24.) The deposition record confirms its sensitivity. PCC's technical decision-makers compete against CPP for the same customers in the same specialized industry. Courts maintain AEO designations between competitors for precisely this reason. *Deloitte Tax*, 2022 WL 1406612, at *4 ("[c]ourts frequently use 'attorneys' eyes only' protective orders when confidential information is to be provided to a competitor," and harm may result where the person given access "is involved in competitive decision-making"); *WalkMe Ltd. v. Whatfix, Inc.*, No. 23-cv-03991-JSW (TSH), 2024

5

WL 3697040, at *4 (N.D. Cal. Aug. 6, 2024) (retaining AEO designations over a direct competitor's challenge). Nor does Paragraph 3(b) of the Protective Order draw any distinction PCC can exploit: it protects "financial, personal, technical, proprietary, or business information" alike. PCC itself previously invoked the financial end, designating and then sealing its pricing and negotiation-strategy material. CPP has now invoked the technical end. PCC would have this Court treat one half of Paragraph 3(b) as enforceable and the other half as not.

### B.  PCC's Challenges Fail on the Record

First, as to Part 3076, CPP developed and began manufacturing this part years before Daugherty was hired by CPP. (Daugherty Dep. (May 14, 2026) 119:1-2.) Where in contrast, PCC has never manufactured Part 3076. (Id. 118:4-7.)

Mr. Daugherty further testified that his involvement in the Part 3076 program is limited to mentoring a young engineer in his attempt to solve existing manufacturing issues. PCC's argument continues its trend of factually unsupported speculation. While PCC's position paper asserts Mr. Daugherty "likely directed" process-documentation changes made by the young engineer, Mr. Daugherty unequivocally testified that he is not aware of, has not directed, and has not made any such changes. (Daugherty Dep. (May 14, 2026) 177:24-178:21.)

Mentoring a colleague on general engineering practice is not part development, and PCC identifies no PCC trade secret that could be embodied in a CPP program for a part PCC has never manufactured. The primary focus of this litigation is PCC's allegation that Mr. Daugherty has misappropriated its trade secrets. It defies logic how Mr. Daugherty could misappropriate a trade secret for a part never manufactured by PCC, which was in production at CPP years before Mr. Daugherty arrived. De-designating documents and testimony related to a part which could never be misappropriated does not further PCC's prosecution of its actual claims in this case. Rather, it

6

could only be used to help PCC gain a competitive advantage in its attempt to catch up to CPP in the manufacture of Part 3076.

Next, with respect to the Third Party Vendor, PCC again speculates, with zero supporting evidence, that CPP's integration of the vendor is a "potential point of injection" of PCC trade secrets. The Third Party Vendor does no business with PCC: it is not a shared supplier, holds no PCC information, and has no relationship through which any PCC trade secret could migrate. (Walker Dep. (May 7, 2026) 57:6-11.) Both the identity of the Third Party Vendor and the integration work it is performing on behalf of CPP are CPP's most sensitive development work. (Daugherty Dep. (May 14, 2026) 174:6-17.) Mr. Daugherty's testimony further closes the door: the process under development is "a unique machining process that I was unaware [of] until I joined CPP," and he had "no exposure to specific techniques of [the Vendor's process] at PCC." (Daugherty Dep. (June 25, 2025) 29:13-18, 30:3-7.)

PCC's request thus reduces to a demand that its technical personnel be permitted to study CPP's proprietary integration methodology to check whether PCC information might be inside it, when the sworn record already forecloses that possibility.

### C. Less Intrusive Alternatives Remain Available; PCC Demands the One Path the Order Forbids

There are common-sense alternatives to de-designation that would fully serve PCC's stated aim. For example, name-redacted production of the Third Party Vendor documents, or PCC's identification of its overlapping vendors or parts, could trigger a genuine relevance conversation or confirm the absence of overlap and thus no legitimate need for review by PCC personnel. Toward that end, Defendants offered in good faith real accommodations to permit PCC's counsel to have a structured discussion with Mr. Sitabkhan concerning Part 3076 and any PCC relationship with the Third Party Vendor. ***PCC pursued none of this***.

7

PCC's July 9, 2026 position paper asks instead that the designations be lifted so counsel may review the designated documents and testimony with now *two* members of its senior technical staff: Salim Sitabkhan and Tobin Sikora, selected, PCC explains, because Mr. Sikora has the most technical expertise. That request is narrower in label than in substance. The two topics are coextensive with the designated technical material itself, and the proposed audience is the very audience Paragraph 5(b) of the Protective Order exists to exclude. Mr. Sikora directs the technical function that develops PCC's competing products, including its attempted development of Part 3076; Mr. Sitabkhan is one of PCC's principal IGT technical leaders. Their day-to-day responsibilities include the very decisions, vendor selection, capital planning, and product priorities, that both topics implicate.

That structural overlap is the reason for the AEO tier, not a reason to override it. The Protective Order already supplies the lawful path: Paragraph 5(b)(4) permits disclosure to independent experts, and the Sixth Circuit has held that limiting review of a competitor's technical material to an outside expert, rather than the party's own employees, properly balances access against competitive risk, even where the party protests that its employees are "in the best position to evaluate" it. *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 269-70 (6th Cir. 2010). PCC has never explained why it failed to retain a third-party expert to perform the correlation analysis it says it needs. The only capacity Mr. Sikora and Mr. Sitabkhan possess that an independent expert does not is the capacity to carry what they learn back into PCC's own development work. That capacity is the harm, not the need.

PCC's symmetry argument, that if Mr. Daugherty can be trusted then PCC's personnel deserve the same confidence under the Protective Order, fails on PCC's own theory of this case. PCC's case proceeds on the premise that a technically sophisticated person exposed to a

competitor's sensitive information cannot be relied upon to refrain from using it, whatever his intentions. PCC cannot prosecute that theory against Mr. Daugherty while insisting its own technical team can review CPP's development documents for Part 3076 and the integration of the Third Party Vendor and set that knowledge aside in their daily work. Under PCC's own theory, the disclosure it seeks would accomplish, in reverse, the very injection it claims to fear. And the assurance that PCC's personnel remain subject to the Protective Order proves too much: every receiving party's personnel are subject to its terms, so the assurance "would seem to apply to pretty much anything" and would dissolve the AEO tier in every case between competitors. *WalkMe*, 2024 WL 3697040, at *4. Defendants remain prepared to implement the June 4 framework, either alternative above, or any narrower accommodation the Court deems appropriate.

**D.** **PCC Has No Litigation Need That Outside Counsel's Full Access Does Not Already Satisfy.**

PCC's outside counsel at two law firms have unrestricted access to every designated document and every page of designated testimony for all litigation purposes. PCC agreed to the terms of the Protective Order and, until well after the close of discovery, PCC never identified a litigation task its counsel could not perform under the current designations. Even now, the relief PCC seeks requires it to identify a concrete need that outweighs a demonstrated competitive risk, and PCC cannot. The contrast with PCC's own authority makes the point. In *Penn, LLC v. Prosper Business Development Corp.*, the court lifted an AEO designation where the designator offered only conclusory assertions of harm and the challenger held an ownership interest in the very records at issue. No. 2:10-cv-0993, 2012 WL 5948363, at *3-5 (S.D. Ohio Nov. 28, 2012). Here the positions are reversed: Defendants' showing of harm is specific, sworn, and undisputed, while PCC's asserted need rests on speculation the deposition record refutes, about documents in which PCC has no interest other than that they belong to its competitor.

PCC's failure is dispositive. A party contesting confidentiality protections "must show... why winning th[e] discovery dispute would make a difference to" its interests in the litigation. *McGhee-Twilley v. CoreCivic of Tenn., LLC,* No. 24-5707, 2025 WL 1628481, at *3 (6th Cir. June 9, 2025). A stipulated order reflects "a basic agreement between the parties about who can have access to documents that merit a certain level of confidentiality," and generic assertions of prejudice that "would seem to apply to pretty much anything" cannot rewrite that bargain absent a showing that "there is something special or different about these particular documents." *WalkMe,* 2024 WL 3697040, at *4. Fourteen months into this case, after two phases of discovery, nine depositions, a full evidentiary hearing, and now *two* trips to the Sixth Circuit Court of Appeals, PCC has failed to identify a single shred of evidence that Mr. Daugherty has used or disclosed any PCC information at CPP. The speculative hope of finding something is not a need that outweighs demonstrated competitive harm. *See Deloitte Tax,* 2022 WL 1406612, at *5-*8 (sustaining AEO protections even where the objecting parties, one pro se, claimed they could not afford an expert and could not defend the case at all). PCC faces no comparable constraint.

### E. Both Parties Administered the AEO Tier Together

Throughout this case, both parties have regularly designated documents and testimony AEO. During the briefing in the preliminary injunction phase, PCC informed this Court that it had designated its own documents "Attorneys' Eyes Only" and also stated that "Defendants designated similar financial information in their document production as Attorneys' Eyes Only." (Doc. 24 at 3.) PCC offered Defendants' parallel designations as corroboration that AEO treatment was appropriate for material of this kind, without any suggestion that they were improper or overbroad. A party that invokes its opponent's designations as support for its own benefit is poorly positioned to argue, a year later, that the same tier applied by the same order is illegitimate.

The same ground rules held in the deposition phase. At the June 24, 2025 deposition of Chady Abouabdallah, PCC's counsel repeatedly invoked AEO protection over PCC's own documents and testimony, and Defendants complied without objection. CPP's in-house counsel, Mr. Legenza, stepped out of the deposition during PCC-designated testimony, and Defendants agreed that one PCC document, Bates PCP0001300, would be withheld even from Mr. Daugherty himself. (Abouabdallah Dep. 25:9-21, 26:3-25, 31:1-21, 35:14-22, 36:1-7, 55:6-7.) That document is the same exhibit PCC later identified to this Court as its most sensitive. (Doc. 24 at 3; Second Polen Dec. ¶ 6.) At Mr. Daugherty's deposition the next day, Defendants' counsel asked that "the same rules apply today that we did yesterday... in terms of AEO designation," PCC's counsel twice agreed on the record, tracked the designations segment by segment as the examination proceeded, and stated that the parties' stipulations would "carry forward" through the remaining depositions. (Daugherty Dep. (June 25, 2025) 6:1-21, 133:15-25, 134:1-11.) The designations PCC now attacks were administered with its participation and express agreement from the first week of this case.

That history matters to the Rule 26(c) balance. PCC asks for the benefit of an order whose corresponding burdens it never bore: no PCC representative was ever excluded to protect CPP's designations, because PCC brought no corporate representative at all. (Daugherty Dep. (June 25, 2025) 6:10-14.) CPP's in-house counsel left the room to protect PCC's information; PCC now asks that its senior technical personnel be admitted to CPP's. The Order does not distribute its protections that way.

### F. Defendants Produced Documents and Witnesses in Reliance on Designations PCC Accepted, Used, and Left Unchallenged Until After the Depositions

The equities independently support the designations. The challenged designations were applied to CPP's productions of March 12 through 23, 2026 (JD00001-00112; CPP004269-006710; CPP006711-007246) and the deposition testimony that followed. PCC did not object upon

11

production, at the close of fact discovery on March 31, 2026, or before or during the May depositions. **PCC's first objection came months after Local Rule 37.1(b)'s requirement that discovery disputes be raised within ten days of the cutoff**, a window that closed April 10, 2026. In between the close of discovery and their objections, PCC's counsel marked CPP's AEO-designated documents as PCC's own exhibits and examined both witnesses on their contents at length, without once objecting to a designation or reserving a challenge. (Daugherty Dep. (May 14, 2026) Exs. 2-3, 7-13; CPP 30(b)(6) Dep. (May 7, 2026) Exs. 3-4, 11.) The witnesses answered detailed questions about Part 3076 and the Third Party Vendor in reliance on Paragraph 4 of the Protective Order's assurance that their testimony would be protected as designated. A party that banks the full evidentiary value of designated material and objects only when the designations' reciprocal limits come due has not been obstructed by them; it has relied on them and so have Defendants. That is reliance in its strongest form. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir. 1994) (reliance greatest "where witnesses had testified pursuant to a protective order"); *SEC v. TheStreet.Com,* 273 F.3d 222, 230 (2d Cir. 2001) ("presumptively unfair" to modify protective orders "upon which the parties have reasonably relied"); *Allen v. City of New York,* 420 F. Supp. 2d 295, 300-01 (S.D.N.Y. 2006).

*In re September 11 Litigation,* 262 F.R.D. 274 (S.D.N.Y. 2009), illustrates the point: the challengers there said nothing while roughly one million pages were produced and witnesses deposed, then sought wholesale de-designation, and the court there denied the motion because their unexplained silence had entitled the designating parties to rely on the order "in settling cases, producing documents and witnesses for depositions, and reconciling discovery disputes." *Id.* at 277. Similarly, PCC proceeded through conferral and this Court's July 16 Order, and Defendants carry the burden here, but the sequence that matters to the equities is the same. Had PCC objected

upon production, or at any point before the May depositions, the issue could have been resolved before Defendants' witnesses testified. PCC instead participated in the designations, examined Defendants' witnesses on the designated documents, and objected only after the depositions were complete and fact discovery had closed. That choice should not be rewarded with the very access Defendants relied on the Protective Order to withhold.

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion and maintain the Attorneys' Eyes Only designations applied to CPP's productions and the corresponding deposition testimony under the Stipulated Protective Order.

Respectfully submitted,

/s/ James M. Drozdowski
James M. Drozdowski (0065215)
Nancy Oliver (0071142)
Joseph A. Nero (0095392)
**KAUFMAN, DROZDOWSKI &**
  **GRENDELL, LLC**
29525 Chagrin Boulevard, Suite 250
Pepper Pike, Ohio 44122
Telephone: 440.462.6216
Facsimile: 440.462.6504
jimd@kdglegal.com
nao@kdglegal.com
jn@kdglegal.com
*Counsel for Defendant Justin*
*Daugherty*

/s/ Phil Eckenrode
W. Eric Baisden (0055763)
Phil Eckenrode (0084187)
**BENESCH, FRIEDLANDER, COPLAN**
  **& ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone: 216.363.4500
Facsimile: 216.363.4588
peckenrode@beneschlaw.com
ebaisden@beneschlaw.com
*Counsel for Defendant Consolidated*
*Precision Products*

13

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2026, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

/s/ Phillip G. Eckenrode, Jr.
*Counsel for Defendant Consolidated Precision
Products Corp.*

14